UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

      v.                                            1:08-CR-510-DNH

ANDREW S. BANKS,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

OFFICE OF THE UNITED STATES        CARLOS A. MORENO, ESQ.
ATTORNEY–ALBANY OFFICE             Assistant United States Attorney
Attorney for the United States
445 Broadway, Room 218
Albany, New York 12207-2924

OFFICE OF THE FEDERAL PUBLIC       TIMOTHY E. AUSTIN, ESQ.
DEFENDER–ALBANY OFFICE             Assistant Federal Public Defender
Attorney for the Defendant
39 North Pearl Street, 5th Floor
Albany, New York 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

       Defendant Andrew S. Banks ("defendant") moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) to suppress evidence seized during the execution of a search warrant for an apartment and during a search of his person incident to his arrest without a warrant. The United States of America ("the Government") opposes defendant's motion. Pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978), a hearing was held on May 28, 2009 in Utica, New York to determine the truthfulness of the factual assertions made

in the search warrant application. Following the conclusion of the Franks hearing, additional evidence was received to evaluate the lawfulness of defendant's arrest without a warrant. Decision was reserved.

## II. BACKGROUND

On August 27, 2007, Special Agent William J. Mayo ("SA Mayo") of the Bureau of Alcohol, Tobacco, Firearms & Explosives applied for a warrant to search Building 5, Apartment 11 ("B5 A11") within the Griswold Heights Public Housing Apartment Complex ("the apartment complex") located in Troy, New York. SA Mayo stated he had reason to believe that located within the apartment was "evidence of the possession of a firearm and/or ammunition by a prohibited person in violation of Title 18, United States Code, Section 922(g)(8) within the Northern District of New York." (See Ex. B to Def's. Mot. to Suppress, Dkt. No. 26-4.) Within the attached affidavit in support of the warrant application, SA Mayo affirmed, *inter alia*, the following: (1) he had learned from a Confidential Informant ("CI") cooperating with the Troy Police Department that defendant was in possession of several firearms, including two handguns and a .223 caliber rifle; (2) the CI reported that defendant used B5 A11 as a location to store, repair, and clean firearms for others living within the apartment complex; (3) the CI had provided reliable information on past occasions regarding narcotics trafficking; (4) Troy Housing Authority records indicated B5 A11 was registered to Daisy Lind, the mother of defendant's two-month old daughter; (5) defendant was subject to a Order of Protection issued on June 4, 2007, prohibiting him from assaulting, harassing, or threatening Ms. Lind; and (6) on July 8, 2007, a complaining witness reported being menaced with an "AK-47 type rifle" at or near an apartment inside building 13 of the apartment complex. (Id.)

A search warrant was later issued and executed for B5 A11, whereupon federal law enforcement officials seized two firearms, ammunition, and legal documents bearing defendant's name. (Ex. C to Def's. Mot. to Suppress, Dkt. No. 26-5.) Although not physically seized, (see id.), articles of clothing belonging to the defendant were found inside the apartment and subsequently photographed. (Ex. D to Def's. Mot. to Supress, Dkt. No. 26-6, 3.) SA Mayo indicated in his investigative report that the apartment was unoccupied at the time of entry. (Ex. E to Def's. Mot. to Suppress, Dkt. No. 26-7.) According to the inventory report, the search was executed on August 28, 2007, at approximately 7:15 p.m. (Ex. C to Def's. Mot. to Suppress, Dkt. No. 26-5.)

Shortly after the search began, defendant was observed walking towards a group of officers outside the front entrance to B5 A11. Having noticed the presence of law enforcement, defendant identified himself, explained his relationship to Ms. Lind and one of her daughters, and asked about their safety. SA Mayo informed him that everyone was safe and instructed him to leave the area. As defendant was leaving the area, another law enforcement official asked him to return because he had not yet been searched "for weapons." (Hr'g Tr., 60; see also Def's. Decl., Dkt. No. 26-2, ¶12.) After refusing to be searched, Troy Housing Authority Officer Matthew McLaughlin ordered another officer to arrest defendant for trespassing on Troy Housing Authority property and for violating the Order of Protection prohibiting him from harassing Ms. Lind. (Id. at 60, 97.)

Defendant was then handcuffed and searched incident to his arrest. The search of his person revealed a key to the front door for Ms. Lind's apartment. Defendant was thereafter booked and processed at the Troy Police Station prior to his arraignment on August 29, 2007. He was later indicted by a federal grand jury on September 26, 2008 for

being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(8). (See Indictment, Dkt. No. 20.)

## III. DISCUSSION

Defendant challenges the validity of the search warrant for Ms. Lind's apartment and the search of his person incident to his arrest without a warrant. First, defendant argues SA Mayo made omissions in his search warrant application that were material to the magistrate's determination of probable cause. Second, defendant contends his arrest was illegal without a warrant.

### A. Motion to Suppress Evidence Seized from Ms. Lind's Apartment

The Fourth Amendment to the United States Constitution requires that a search warrant be based upon probable cause. U.S. CONST. amend. IV; see also FED. R. CRIM. P. 41(d). To determine probable cause, an issuing magistrate must consider whether the totality of the circumstances set forth in the warrant application and supporting affidavits establish a "fair probability" that evidence of a crime will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). Upon review of a decision to issue a search warrant, a magistrate's prior determination of probable cause is afforded great deference, and "any doubt about the existence of probable cause [is resolved] in favor of upholding the warrant." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998) (citing United States v. Jakobetz, 955 F.2d 786, 803 (2d Cir. 1992)).

Generally, the exclusionary rule bars evidence obtained in violation of the Fourth Amendment. See Mapp v. Ohio, 367 U.S. 643, 654-55, 81 S. Ct. 1684, 1691 (1961). However, even if a search warrant is ultimately determined to lack probable cause, evidence will be admissible so long as the law enforcement officials who executed the search "relied

- 4 -

on the warrant in 'objective good faith.'" United States v. Cancelmo, 64 F.3d 804, 807 (2d Cir. 1995) (quoting United States v. Leon, 468 U.S. 897, 923, 104 S. Ct. 3405, 3420 (1984)). The question of an officer's good faith reliance, or lack thereof, "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 923, n.23, 104 S. Ct. at 3420.

In Leon, the Supreme Court identified four situations where an executing officer's reliance on a search warrant could not have been in good faith: (1) the issuing magistrate was either knowingly or recklessly misled by false information during his review of the warrant application; (2) the issuing magistrate entirely abandoned his judicial role; (3) the officer's affidavit in support of the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant application is facially deficient to the extent it fails to state the particular place to be searched or items to be seized. Id. at 923, 104 S. Ct. at 3421 (citations omitted).

The first scenario identified in Leon permits an evidentiary hearing to determine whether the affiant seeking the search warrant made false statements that were material to the probable cause issue. See Franks, 438 U.S. at 155-56, 98 S. Ct. at 2666. Based upon evidence received during a Franks hearing, a defendant must first prove by a preponderance of the evidence that the affiant either knowingly misled the magistrate or made factual assertions that were so false as to constitute a reckless disregard for the truth. Id. If it is proven that the affiant knowingly or recklessly misled the magistrate, the evidence seized pursuant to the search warrant must be excluded so long as the affiant's false statements were material to the probable cause determination. Id.

The question of whether probable cause existed to issue a search warrant need not be decided where the good faith exception to the exclusionary rule applies.  See Leon, 468 U.S. at 925, 104 S. Ct. at 3422 (granting courts the discretion to consider an officer's good faith reliance on an issued warrant before determining whether probable cause existed); see also Cancelmo, 64 F.3d at 807.   Defendant raises two arguments for why the good faith exception should not apply: first, defendant maintains that SA Mayo's supporting affidavit was wholly inadequate to establish the reliability of the CI, thereby rendering it objectively unreasonable for any officer to rely upon the warrant; and second, that SA Mayo either knowingly or recklessly misled the issuing magistrate by omitting statements from his affidavit that were material to the determination of probable cause. (See Def's. Supplemental Mem. of Law, Dkt. No. 37, 1-4.)

### 1. **The Credibility of the Confidential Informant**

Warrant applications based primarily upon an informant's statements require a determination of whether the information is reliable.  United States v. Wagner, 989 F.2d 69, 72-73 (2d Cir. 1993).  As explained in Wagner,

> [i]nformation may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence. If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that he provides, though uncorroborated, is also reliable.

Id.

The limited question of whether it was reasonable for SA Mayo to rely upon the issued warrant precludes the more general review of the magistrate's decision to find the CI's

information sufficiently reliable.  SA Mayo affirmed to the magistrate that the CI had previously provided reliable information regarding narcotics trafficking and other state law violations. (Ex. A to Def's. Mot. to Suppress, Dkt. No. 26-2.)  Accordingly, without commenting on whether the magistrate properly credited the information provided by the CI, the search warrant application was not so deficient that a reasonably well-trained officer would have necessarily known that the search of Ms. Lind's apartment was illegal.

### 2. The Truthfulness of the Information Provided to the Magistrate

SA Mayo admitted during the Franks hearing that his affidavit omitted several details known to him at the time of his warrant application. (Hr'g Tr., 36-45.)  In particular, defense counsel objects to SA Mayo's omissions regarding his description of the menacing complaint.  According to defendant, the omissions misled the magistrate to believe that he was the unidentified assailant who menaced the complainant.  In his affidavit, SA Mayo described the menacing complaint as follows:

> I am informed that on July 8, 2007, Troy law enforcement officers were called to the Griswold Heights Apartment Complex where a complainant reported that an unidentified black male menaced him with an "AK-47 type rifle. [sic][1] The complainant stated that he went to an apartment in Building 13, to confront a woman who owed him money.  Building 13 is approximately 200 yards from Building 5.

(Ex. B to Def's. Mot. to Suppress, Dkt. No. 26-3, ¶ 12.)  SA Mayo omitted several facts that would have otherwise cut against the credibility of the complainant, including the complainant's refusal to identify himself to police, his refusal to describe his assailant other than to say that he was menaced by a black male, his inability to provide the apartment

---

[1] SA Mayo's affidavit does not contain closed quotations.

number that he claimed he was visiting at the time of the alleged menacing, his refusal to show police which apartment he was visiting, and the fact that no one under the name of the person he claimed he was visiting was registered under any of the apartments in Building 13. (Hr'g Tr., 42-44.)  Defendant also suggests that SA Mayo misled the issuing magistrate to believe the CI had observed defendant perform pull-ups inside Ms. Lind's apartment. Although there was some disagreement as to the exact location of the pull-up bar, both parties stipulated at the beginning of the Franks hearing that the pull-up bar was located outside the apartment.  (Id. at 5-6.)  In his affidavit, SA Mayo informed the magistrate that the CI reported that defendant would perform exercises on a pull-up bar "located just outside the doorway of Lind's apartment" and that SA Mayo personally corroborated the CI's account of a pull-up bar outside B5 A11.  (Ex. B to Def's. Mot. to Suppress, Dkt. No. 26-3, ¶¶ 6-7.)

      Notwithstanding SA Mayo's omissions, the information provided in his supporting affidavit does not surmount to knowingly or recklessly misleading the issuing magistrate.  At a minimum, someone at the apartment complex reported being menaced with an assault rifle at a location relatively close to B5 A11.  Regardless of whether the magistrate was led to believe that the assailant described in the menacing complaint was in fact the defendant, the report of an "AK-47 type rifle" in or around Building 13 of the apartment complex remains relevant to the probable cause determination because the CI provided information that defendant was using a nearby apartment to store, repair, and clean firearms for others in the apartment complex.  Although the menacing complaint would be insufficient by itself to justify a finding of probable cause, the complaint supports SA Mayo's belief that an assault rifle was seen in an area near Ms. Lind's apartment. Additionally, the complaint is relevant to the

extent that the CI provided information indicating defendant had "an assault style rife that had a 'banana clip' (high capacity magazine) and a folding stock." (See Ex. B to Def's. Mot. to Suppress, Dkt. No. 26-3, ¶¶ 6, 8.) Even if the omitted information had been included within SA Mayo's affidavit, there would remain "a residue of independent and lawful information sufficient to support probable cause," United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) (quoting United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985)), stemming from the CI's information pertaining to defendant's firearm dealings, the report of an assault rifle in the area nearby B5 A11, and the established relationship between Ms. Lind and the defendant.

Additionally, there was no evidence introduced at the Franks hearing to support the finding that SA Mayo knowingly or recklessly provided false information as to the pull-up bar. Although the parties stipulated that the pull-up bar was located outside B5 A11, none of the witnesses testified whether the pull-up bar was installed directly outside Ms. Lind's apartment or, as defendant contends, outside the main entrance to Building 5. In any event, even if SA Mayo had misled the issuing magistrate to believe the pull-up bar was located directly outside the front door to B5 A11, this misrepresentation would not be material to the probable cause determination because SA Mayo never described the pull-up bar as being located within the actual apartment. Instead, he maintained that the pull-up bar was "located outside of Apartment 11, Building 5, to the right of the door." (Ex. B to Def's. Mot. to Suppress, Dkt. No. 26-3, ¶ 7.) Having stated that the pull-up bar was positioned outside the apartment, SA Mayo's affidavit did not falsely bolster the CI's credibility as to knowledge of defendant's conduct inside the apartment.

The good faith exception applies in light of the information contained in SA Mayo's affidavit. At the very minimum, the statement that the CI had provided credible information in the past made it objectively reasonable for SA Mayo to rely upon the issuing magistrate's determination of probable cause. Additionally, even after putting aside SA Mayo's omissions with respect to the menacing complaint, there still existed an independent basis to determine probable cause based upon the CI's account of defendant's conduct, the relationship between defendant and Ms. Lind, and the undisputed fact that someone reported having seen an assault rifle in vicinity of Ms. Lind's apartment. Finally, the Franks hearing did not provide evidence that SA Mayo knowingly or recklessly provided false information as to the pull-up bar, and any misrepresentation concerning the pull-up bar was not material because SA Mayo stated it was located outside the apartment. Therefore, defendant's motion to suppress the evidence seized from B5 A11 will be denied.

### B. Motion to Suppress Evidence Seized from Defendant's Person

The Fourth Amendment also protects against unreasonable searches of someone's person. U.S. CONST. amend. IV. Warrantless searches "are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967) (footnotes omitted). After it is established that a warrantless search occurred, the Government bears the burden of proving that the search was legal pursuant to an exception to the warrant requirement. United States v. Perea, 986 F.2d 633, 639 (2d Cir. 1993).

One of the exceptions to the requirement is a search incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 232-33, 94 S. Ct. 467, 475-76 (1973). An arrest

will be considered unlawful if the police lack probable cause.  Perea, 986 F.2d at 642-43 (2d Cir. 1993) (citing Dunaway v. New York, 442 U.S. 200, 208 & n.9, 99 S. Ct. 2248, 2254 & n.9 (1979)).  Probable cause to make an arrest requires that the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Rather than focus upon subsequently learned information, the probable cause determination concerns only the arresting officer's knowledge before and during the time of arrest.  Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996) (citing Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir. 1990)).

The Government contends defendant's arrest was lawful because there was probable cause to believe he had committed criminal contempt in the second degree for his alleged violation of an outstanding Order of Protection prohibiting him from coming near Ms. Lind, Ms. Lind's apartment, and his daughter.  Alternatively, the Government argues there was probable cause to arrest defendant for criminal trespass because he entered the apartment complex property after being advised to remain off the premises.

### 1. Criminal Contempt in the Second Degree

Under New York law, "[a] person is guilty of criminal contempt in the second degree when he engages in . . . [i]ntentional disobedience or resistance to the lawful process or other mandate of a court . . . ."  N.Y. PENAL LAW § 215.50 (McKinney 1999).  At the evidentiary hearing, Officer McLaughlin testified that there were a number of police officers standing outside the front entrance to Ms. Lind's apartment, some of which were either

bearing police insignia on their clothing or were in uniform. (Hr'g Tr., 106-07.) He also testified that defendant approached the officers on his own accord and began to ask about the safety of Ms. Lind and her daughter, presumably because of the large police presence outside the apartment. (Id. at 108-09.) Although Officer McLaughlin admitted he was initially unaware of defendant's Order of Protection, he testified that he was made aware of the court order "less than a minute or two" after defendant begun speaking with law enforcement officials outside Ms. Lind's apartment. (Id. at 95.)

Even assuming that Officer McLaughlin learned of the outstanding Order of Protection prior to ordering defendant's arrest, the totality of the circumstances known to him at that time did not amount to probable cause to believe defendant intentionally disobeyed a court order. Pursuant to New York's penal law, "[a] person acts intentionally . . . when his conscious objective is to cause such result or to engage in such conduct." N.Y. PENAL LAW § 15.05 (McKinney 1999). Defendant's candid approach to Ms. Lind's apartment in front of a number of law enforcement officials, his immediate and overt concern for Ms. Lind's safety and the safety of his daughter, and his beginning to walk away from the area before being asked to consent to a search would have made clear to a person of reasonable caution that he never had the "conscious objective" to disobey the Order of Protection. Instead, the undisputed facts show that defendant sought merely to inquire as to the safety of Ms. Lind and his daughter because of the police activity outside Ms. Lind's apartment. Apart from defendant's mere presence near her apartment, the Government has not pointed to any evidence to support otherwise. Accordingly, the Government has failed to meet its burden to

show that probable cause existed to arrest defendant for criminal contempt in the second degree.

### 2. **Criminal Trespass**

Under New York's criminal trespass statute, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. PENAL LAW § 140.05 (McKinney 1999). Notably, the Government does not offer any argument in its post-evidentiary hearing submissions for why probable cause existed to believe defendant had committed criminal trespass. (See Government's Second Mem. of Law in Opp'n to Def's. Mot., Dkt. No. 36, 8-9.) Rather, the Government's argument, albeit brief, is entirely devoted to why probable cause existed to arrest defendant for violating the Order of Protection. (See id. at 9.) Additionally, there is no evidence to suggest that defendant's presence at the apartment complex was unlawful. Although only documented residents are permitted to live at the apartment complex, Officer McLaughliln testified that anyone can enter the property. (Hr'g Tr., 116.) Most importantly, Officer McLaughlin admitted during cross-examination that the initial arrest was solely for the alleged violation of the Order of Protection and that it was not until later that another officer charged defendant with criminal trespass. (Hr'g Tr. 117-18.) Officer McLaughlin went so far as to acknowledge that he was unaware at the time of the arrest whether defendant was directed to remain off the apartment complex property. (Id. at 118.) The Government has therefore failed to meet its burden to show that Officer McLaughlin was aware of sufficient information to believe that defendant had committed criminal trespass at the time the arrest was made.

## IV. **CONCLUSION**

Defendant's motion to suppress the evidence seized from Ms. Lind's apartment must be denied in light of the good faith exception to the exclusionary rule. Regardless of whether the issuing magistrate properly determined the CI's information to be reliable, the search warrant application was not so lacking in indicia of reliability to render it unreasonable for SA Mayo to rely upon the warrant. SA Mayo stated that the CI had provided reliable information in the past as to other criminal conduct, and accordingly, he could reasonably rely upon the issuing magistrate's decision that probable cause existed to grant the warrant application.

Likewise, SA Mayo's omissions as to the menacing complaint and his representations with regard to the pull-up bar do not warrant the exclusion of the evidence seized from Ms. Lind's apartment. Even if the omitted information concerning the complainant had been included in SA Mayo's affidavit, there would remain an independent basis for finding probable cause because of the CI's information, defendant's relationship with Ms. Lind, and the report of someone brandishing an assault rifle in the vicinity of Ms. Lind's apartment. Further, SA Mayo's statements regarding the pull-up bar did not misrepresent information that was material to the probable cause determination. SA Mayo consistently indicated the pull-up bar was located outside Ms. Lind's apartment, and he never suggested that the CI's knowledge of the pull-up bar bolstered his credibility as to defendant's conduct inside the apartment.

In contrast, defendant's motion to suppress the evidence seized during the search of his person must be granted because, at the time of his arrest, there was no probable

cause to believe he had committed either of the offenses set forth by the Government. Quite plainly, the totality of the circumstances known to Officer McLaughlin never indicated that it was defendant's conscious objective to enter Ms. Lind's apartment, to harass her or his daughter, or to otherwise violate the Order of Protection. Rather, defendant's conduct showed that his intent was to inquire with the police about the safety of Ms. Lind and his daughter because of the substantial police presence visible outside of Ms. Lind's apartment. Similarly, the Government has not pointed to any evidence indicating that Officer McLaughlin had probable cause to believe defendant had committed criminal trespass. The Government does not contend otherwise in its post-hearing submissions, and in any event, Officer McLaughlin testified that he was unaware at the time of the arrest of whether defendant had been instructed to remain away from the apartment complex.

Accordingly, it is

ORDERED that

1) Defendant's motion to suppress the evidence seized from Ms. Lind's apartment is DENIED; and

2) Defendant's motion to suppress the evidence seized from his person is GRANTED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 29, 2009
       Utica, New York.